# Supreme Court of Texas

No. 24-0205

Huffman Asset Management, LLC and Prairie Capital, LLC,

*Petitioners,*

v.

Maurice Colter and Ni-Ida Colter,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE HUDDLE, joined by Justice Devine, Justice Young, and Justice Sullivan, concurring.

This case requires grappling with *Whitney* certificates and Section 5.253 of the Business Organizations Code, but its import reaches beyond those particulars. It is one more data point illustrating that default judgments rarely withstand appeal, and rightly so. I gladly join the Court's opinion in full. For practitioners and judges who have not scoured the Court's default-judgment opinions as a whole, I write separately to append the following tl;dr.

The skepticism of default judgments evident in the Court's opinion today is not new. But it has become acute. Before the turn of

the century, the Court viewed default judgments "somewhat differently" from appeals following a trial on the merits, in part because "an adjudication on the merits is preferred." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992). Fast-forward a few decades and the Court is describing no-answer default judgments as "disfavored." *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020). By 2024, default judgments were "greatly disfavor[ed]" and barely tolerable. *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 920–21 (Tex. 2024) (discussing importance of adversarial presentation). Today they are nearly verboten, particularly when the record hints at gamesmanship in the face of reasonably available means of providing actual notice. *See Shamrock Enters., LLC v. Top Notch Movers, LLC*, 728 S.W.3d 693, 702–03 (Tex. 2026) (Blacklock, C.J., concurring); *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 190–91 (Tex. 2022).

The growing hostility toward default judgments unsurprisingly has yielded consistent—usually unanimous—dispositions in this Court: we have not affirmed a default judgment in more than two decades.[1] As the Court correctly highlights, *ante* at 14, this is true whether the

---

[1] *See Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (affirming a default judgment because some evidence of the defendant's negligence supported the trial court's denial of a bill of review). I recognize that by denying a petition for review challenging a default judgment, we, in effect, let the default judgment stand. But we have cautioned that "our denial of a petition for review does not indicate our views on the merits of any particular issue." *Samson Expl., LLC v. Bordages*, 694 S.W.3d 195, 201 (Tex. 2024).

Court's decision turns on the text of a statute governing service,[2] a rule of procedure,[3] application of the *Craddock* test,[4] or due process principles.[5]

[2] *See Shamrock Enters.*, 728 S.W.3d at 700 (reversing because the record did not demonstrate strict compliance with the requirements for substituted service under Section 5.251 of the Business Organizations Code); *U.S. Bank Nat'l Ass'n v. Moss*, 644 S.W.3d 130, 137 (Tex. 2022) (reversing because the plaintiff did not use the exclusive service methods for financial institutions under Section 17.028 of the Civil Practice and Remedies Code); *WWLC Inv., L.P. v. Miraki*, 624 S.W.3d 796, 799–801 (Tex. 2021) (reversing because the plaintiff failed to serve the correct agent as defined in Sections 5.201(b) and 5.255(2) of the Business Organizations Code).

[3] *See In re Marriage of Williams*, 646 S.W.3d 542, 544 (Tex. 2022) (reversing because the rules do not require a motion for new trial before raising a legal-sufficiency challenge to a default judgment); *Spanton*, 612 S.W.3d at 317–18 (reversing because substituted service authorized under Rule 106 did not strictly comply with the trial court's order); *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163–65 (Tex. 2015) (reversing because the plaintiff's failure to comply with Rule 239a created a fact issue); *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275–77 (Tex. 2012) (reversing because the plaintiff's failure to comply with Rule 239a constituted some evidence of extrinsic fraud); *Ins. Co. of State of Pa. v. Lejeune*, 297 S.W.3d 254, 255–56 (Tex. 2009) (reversing because the return of citation lacked the time of service as required by Rules 16 and 105); *In re E.A.*, 287 S.W.3d 1, 5–6 (Tex. 2009) (reversing because there was no evidence that the defendant was served with an amended petition under Rule 21a or had constructive notice of it); *Sells v. Drott*, 259 S.W.3d 156, 158–59 (Tex. 2008) (reversing because the rules of procedure entitled the defendant to notice before the trial court struck her answers and granted a default judgment); *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 65 (Tex. 2008) (reversing because a default judgment was granted against a nonparty in violation of Rules 239 and 301).

[4] *See Tabakman v. Tabakman*, 728 S.W.3d 703, 708–11 (Tex. 2025) (reversing because the defendant satisfied each *Craddock* element for a new trial); *In re Marriage of Sandoval*, 619 S.W.3d 716, 722–23 (Tex. 2021) (reversing because the lower courts erroneously excluded an affidavit that supported the first *Craddock* element); *Milestone Operating, Inc. v. ExxonMobil Corp.*, 388 S.W.3d 307, 310 (Tex. 2012) (reversing because the defendant's uncontroverted excuse was sufficient to support the first *Craddock*

Yet as fervently as our opinions decry default judgments, the reality is that the ones that reach this Court are the tip of the iceberg. In this century, only thirty or so of this Court's decisions have squarely addressed whether a default judgment was proper. By contrast, Texas courts render tens of thousands of default judgments each year. *See* OFF. OF CT. ADMIN., ANNUAL STATISTICAL REPORT FOR THE TEXAS JUDICIARY 167 (2024) (reporting that over 50,000 default judgments were rendered in district and statutory county courts during fiscal year 2024). Even for a jurisdiction as busy and populous as ours, 50,000 in one year is too many. Because our legal system's legitimacy depends on adversarial presentation and adjudication on the merits, every practitioner and judge contemplating seeking or signing a default judgment should exercise restraint. Default judgments must be used only as a last resort, never as a strategy. *See Hock v. Salaices*, 982 S.W.2d 591, 593 (Tex. App.—San Antonio 1998, no pet.) ("It is a basic tenet of jurisprudence that the law abhors a default."); *see also E.F. Hutton & Co. v. Moffatt*, 460 F.2d 284, 285 (5th Cir. 1972) ("The entry of

---

element); *Sutherland v. Spencer*, 376 S.W.3d 752, 755–56 (Tex. 2012) (same); *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926–29 (Tex. 2009) (reversing because the defendant satisfied each *Craddock* element).

[5] *See Mitchell*, 649 S.W.3d at 193 (reversing because service by publication violated due process); *In re E.R.*, 385 S.W.3d 552, 565–66 (Tex. 2012) (same); *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 813 (Tex. 2012) (reversing because the defendant had no notice of the trial setting or the default judgment).

judgment by default is a drastic remedy and should be resorted to only in extreme situations.").

                                                   _____

                                                   Rebeca A. Huddle
                                                   Justice

**OPINION FILED:** May 29, 2026